B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>DENNIS L. WOOD | DEFENDANTS<br>WELLS FARGO BANK, NA and<br>WACHOVIA BANK, NATIONAL ASSOCIATION |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Law Office of Jeffrey B. Kelly<br>107 East Fifth Avenue<br>Rome, GA 30161<br>(706) 413-3837 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☑ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor      ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

FRBP 7001(1) – Recovery of Money/Property
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

FRBP 7001(2) – Validity, Priority or Extent of Lien
- ☑ 21-Validity, priority or extent of lien or other interest in property

FRBP 7001(3) – Approval of Sale of Property
- ☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

FRBP 7001(4) – Objection/Revocation of Discharge
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

FRBP 7001(5) – Revocation of Confirmation
- ☐ 51-Revocation of confirmation

FRBP 7001(6) – Dischargeability
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

FRBP 7001(6) – Dischargeability (continued)
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

FRBP 7001(7) – Injunctive Relief
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

FRBP 7001(8) Subordination of Claim or Interest
- ☐ 81-Subordination of claim or interest

FRBP 7001(9) Declaratory Judgment
- ☐ 91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
- ☐ 01-Determination of removed claim or cause

Other
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>DENNIS L. WOOD | BANKRUPTCY CASE NO.<br>R10-43144PWB | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Georgia | DIVISION OFFICE<br>Rome Division | NAME OF JUDGE<br>Paul W. Bonapfel |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/S/ JEFFREY B. KELLY | | |
| DATE<br>August 31, 2010 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jeffrey B. Kelly | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE:  DENNIS LEE WOOD | § | CHAPTER 13 |
| | § | |
| PLAINTIFF | § | CASE NO. R10-43144PWB |
| | § | |
| vs. | § | JUDGE BONAPFEL |
| WELLS FARGO BANK, N.A. | § | |
| and WACHOVIA BANK, | § | CONTESTED MATTER |
| NATIONAL ASSOCIATION | § | |
| | § | |
| DEFENDANTS | § | |

## COMPLAINT OF THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 506(a) AND BANKRUPTCY RULE 3012 TO DETERMINE VALUE OF SECURITY AND CREDITORS' ALLOWED SECURED CLAIM

### Introduction

This is an action brought by the Plaintiff pursuant to 11 U.S.C. Section 506(a) and Rule 3012 of the Federal Rules of Bankruptcy Procedure to determine the value of the interest of the Defendants in the residential real estate of the Debtor and determine the amount of the allowed secured claim of the Defendants.

### Jurisdiction

1.      The Plaintiff alleged that this is a core proceeding as the term is defined by Section 157(b)(2) of Title 28 of the United States Codes in that it concerns claims and matters arising out of the administration of the bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

2.      The Plaintiff further alleges that this Court has both personal and subject matter jurisdiction to hear this case pursuant to the Section 1334 of Title 28 of the United States Code, Section 157 (b)(2) of Title 28 of the United State Code.

## The Base Case and Parties

3.      The underlying Chapter 13 Bankruptcy case was commenced by the filing of a voluntary petition with the Clerk of this Court on the 10th of August, 2010.

4.      An Order for Relief under the provisions of Chapter 13 of Title 11 of the United State Code was duly entered by this Court upon the filing of the petition.  This order served to invoke the provisions of Section 362(a) of Title 11 of the United State Code.

5.      The 341(a) Meeting of Creditors is scheduled for September 27, 2010, in Rome, Georgia.

6.      The Defendants are, upon information and belief, an entity engaged in the business of consumer credit lending in the State of Georgia, and maintains a principle place of business in some state other than the State of Georgia.

## Factual Allegations

7.      In the schedules filed with the petition in this case and on the master mailing matrix filed with the Clerk of this Court, a debt was listed in favor of Defendants for the second deed of trust on the residential real estate of the Debtors.  The debtor believed and therefore alleged in his petition and schedules that there was no equity in his residential real estate to which the second mortgage could secure at the time that the loans were made and, therefore, provided for the claim to be paid as an unsecured claim under the terms of the plan.

8.      The Plaintiff alleges that at the time he filed his bankruptcy petition said residential real estate was valued at approximately $112,000, pursuant to an appraisal the Plaintiff received prior to the filing of his case, a true and correct copy of the aforementioned appraisal is attached hereto marked as Plaintiff's Exhibit "A."

9.    The Plaintiff's interest in his residential real estate is subject to a first lien arising

out of a mortgage in favor of Wells Fargo Bank, N.A. as successor in interest of

Wachovia Bank, National Association (hereinafter "Wells Fargo-first") in the amount of

$134,000.00.

10.    The Plaintiff's interest in his residential real estate is subject to a second lien

arising out of a mortgage in favor of Defendants in the amount of $17,000.00.  Defendant

Wachovia Bank, National Association filed a security deed recorded in Book 2773 on

Pages 1001-1013 with the Clerk of Paulding County Superior Court.  Plaintiff believes

that Wells Fargo Bank, N.A. is the successor in interest to Wachovia Bank, National

Association.  However, no recorded deed is filed in the real estate records.

11.    The lien securing the second mortgage of Defendants is junior to the first

mortgage listed above as owing to Wells Fargo-first.

12.    The Plaintiff alleges that there was no equity in his home at the time the Chapter

13, Case No. 10-43144, was filed and therefore the Defendants have no secured interest

for the loan secured by the second deed of trust on the subject real estate.

13.    Pursuant to 11 U.S.C. Section 506(a), the Defendants have no allowable secured

claim regarding the claim for the second mortgage loan on the subject real estate.

14.    Any timely filed claim of the Defendants for the second mortgage loan is

allowable only as an unsecured claim and to the extent that no such claim was filed, the

Defendants have no secured claim against this case.

    **WHEREFORE**, the Plaintiff respectfully prays of the Court as follows:

    A.  That this Court determine that the Defendants have no secured interest for the

loan secured by the second deed of trust on the residential real estate of the

Debtor;

B.  That this Court order the Defendants to cancel the second mortgage lien on

the residential real estate of the debtors pursuant to 11 U.S.C. Section 506(d),

immediately upon the entry of the Discharge Order and deliver the same to the

attorney for the debtors within 20 days from the date of the entry of the said order

at no charge or fee for the aforesaid cancellation and delivery;

C.  That this Court direct the Trustee that any timely filed proof of claim of the

Defendants for the second mortgage lien be treated as an unsecured claim under

the plan;

D.  That the Plaintiff has such other and further relief as to the Court may seem

just and proper.


Respectfully submitted this 31st day of August, 2010 by:

> Law Office of Jeffrey B. Kelly, P.C.
> Attorney for Debtors
>
>
> /s/ Jeffrey B. Kelly
> Jeffrey B. Kelly
> GA Bar No.  412798

107 E. 5th Avenue
Rome, GA 30161
(706) 413-3837 (Phone)
(706) 413-1365 (Fax)
lawoffice@kellycanhelp.com

**E. Michael Cantrell Company, Inc.**
P O Box 41
Rocky Face, GA 30740
706-537-3845

---

July 6, 2010

Jeffrey B. Kelly
201 A West Crawford Street
Dalton, Ga.
30720

Property -                         2471 Cartersville Highway
                                   Dallas, Ga. 30132-2268
Borrower -                         Dennis L. Wood
File No. -                         10010042
Case No. -

Dear Mr. Kelly:

In accordance with your request, I have prepared an appraisal of the real property located at 2471 Cartersville Highway, Dallas, Ga..

The purpose of the appraisal is to provide an opinion of the market value of the property described in the body of this report.

Enclosed, please find the Summary Report which describes certain data gathered during our investigation of the property. The methods of approach and reasoning in the valuation of the various physical and economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of neighborhood data, led the appraiser to the conclusion that the market value, as of 07/06/2010 is :

$112,000

The opinion of value expressed in this report is contingent upon the Limiting Conditions attached to this report.

It has been a pleasure to assist you. If I may be of further service to you in the future, please let me know.

Respectfully submitted,

E. Michael Cantrell Company, Inc.

E. Michael Cantrell
GA Certification #791

EXHIBIT
A
tabbies

File No.  10010042



## SUMMARY APPRAISAL REPORT

OF THE REAL PROPERTY LOCATED AT

2471 Cartersville Highway
Dallas, Ga.  30132-2268


for

Jeffrey B. Kelly
201 A West Crawford Street
Dalton, Ga.
30720


as of

07/06/2010


by

E. Michael Cantrell
P O Box 41
Rocky Face, GA 30740


E. Michael Cantrell Company, Inc.

## Uniform Residential Appraisal Report

Summary Appraisal Report    File # 10010042

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address | 2471 Cartersville Highway   City Dallas   State Ga.   Zip Code 30132-2268 |
| Borrower | Dennis L. Wood   Owner of Public Record  Same as borrower   County Paulding |
| Legal Description | Plat Book 3/ Page 3 Lot or Block # 1235 |
| Assessor's Parcel # | 085.44.006.0000   Tax Year 2009   R.E. Taxes $ 1,327.25 |
| Neighborhood Name | Dallas Area   Map Reference 085.4.4.006.0000   Census Tract 1203 |

Occupant  X Owner  ☐ Tenant  ☐ Vacant   Special Assessments $   ☐ PUD   HOA $ ___ ☐ per year  ☐ per month
Property Rights Appraised  X Fee Simple  ☐ Leasehold  ☐ Other (describe)
Assignment Type  ☐ Purchase Transaction  ☐ Refinance Transaction  X Other (describe) Determine Fair Market Value
Lender/Client  Jeffrey B. Kelly   Address 201 A West Crawford Street, Dalton, Ga. 30720
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of the appraisal?  ☐ Yes  X No
Report data source(s) used, offering price(s), and date(s).  The subject real property has not been offered for sale in the last twelve months.

### CONTRACT

I  ☐ did  X did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  This is not a sale. No contract noted.

Contract Price $ N/A   Date of Contract N/A   Is the property seller the owner of public record?  ☐ Yes  ☐ No   Data Source(s)  N/A
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes  ☐ No
If Yes, report the total dollar amount and describe the items to be paid:  This not a sale. No concessions noted.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | | One-Unit Housing | | Percent Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Urban ☐ Suburban ☐ X Rural | Property Values | Increasing ☐ | Stable X | Declining ☐ | PRICE $(000) | AGE (yrs) | One-Unit | 40.0 % |
| Built-Up | Over 75% ☐ 25-75% ☐ X Under25% | Demand/Supply | Shortage ☐ | InBalance X | OverSupply ☐ | Low 5 | | 2-4 Unit | % |
| Growth | Rapid ☐ Stable X Slow ☐ | Marketing Time | Under 3 mths ☐ | 3-6 mths ☐ | Over 6 mths X | High 225 | 75 | Multi-Family | % |
| | | | | | | Pred. 75 | 30-40 | Commercial | % |
| | | | | | | | | Other | 60.0 % |

Neighborhood Boundaries  Bound on the North by High Shoals Rd., South by Memorial Dr., East by Highway 61 and West by Gore Lakes Road.

Neighborhood Description  The subject neighborhood is a rural setting and is made up of agricultural, residential and light commercial uses. Ages range from one to seventy five years with thirty to forty being predominant. Values range from $5,000.00 to $225,000.00 with $75,000.00 being predominant.

Market Conditions (including support for the above conclusions)  The market is slow at the present time. There is an over supply of homes on the market in the subject area. This is due to a weak economy and high unemployment in the area. Interest rates are at a all time low but financing is limited. Estimated marketing time is six to twelve months.

### SITE

Dimensions See site plan attached   Area 1.83 Acres   Shape Triangular   View Average
Specific Zoning Classification R-3   Zoning Description Residential
Zoning Compliance  X Legal  ☐ Legal Nonconforming (Grandfathered Use)  ☐ No Zoning  ☐ Illegal (describe)
Is the highest & best use of the subject property as improved (or as proposed per plans and specifications) the present use?  X Yes  ☐ No If No, describe
The highest & best use of the subject real property is its current use.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street Asphalt | X | |
| Gas | | None | Sanitary Sewer | | X Septic | Alley None | | |

FEMA Special Flood Hazard Area  ☐ Yes  X No  FEMA Flood Zone X   FEMA Map No. 130147 0128C   FEMA Map Date 2006-09-29
Are the utilities and off-site improvements typical for the market area?  X Yes  ☐ No. If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes  X No. If Yes, describe
There does not appear to be any adverse easements, encroachments, slide areas or environmental hazards affecting marketability.

### IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units X One ☐ One with Accessory Unit | | ☐ Concrete Slab  X Crawl Space | | Foundation Walls | Brick/Average | Floors | Hd.Wd.Cpt/Fair |
| # of Stories 1.0 Story | | ☐ Full Basement  ☐ Partial Basement | | Exterior Walls | F-Brick/Average | Walls | DW,Paneling/Avg |
| Type X Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area  sq. ft. | | Roof Surface | Comp. Shingle/Avg | Trim/Finish | Wood/Fair |
| X Existing ☐ Proposed ☐ Under Const. | | Basement Finish  None % | | Gutters & Downspouts | Aluminum/Avg | Bath Floor | Tile/Fair |
| Design (Style) 1.0 Story | | ☐ Outside Entry/Exit  ☐ Sump Pump | | Window Type | Aluminum/Average | Bath Wainscot | Tile/Fair |
| Year Built 1969 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | Insulated/Avg | Car Storage | ☐ None |
| Effective Age (Yrs) 20 | | ☐ Dampness X Settlement | | Screens | Yes/Average | X Driveway # of Cars 2 |
| Attic ☐ None | | Heating X FWA ☐ HWBB ☐ Radiant | Amenities | | WoodStove(s)# | Driveway Surface Conc./Avg |
| ☐ Drop Stair ☐ Stairs | | ☐ Other  Fuel Elec. | | X Fireplace(s) # 1 | ☐ Fence | ☐ Garage # of Cars |
| ☐ Floor ☐ Scuttle | | Cooling X Central Air Conditioning | | X Patio/Deck | X Porch Front | X Carport # of Cars 2 |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool | X Other Enc. | X Att. ☐ Det. ☐ Built-in |

Appliances  X Refrigerator  X Range/Oven  X Dishwasher  ☐ Disposal  ☐ Microwave  ☐ Washer/Dryer  X Other (describe) Hood & Fan
Finished area above grade contains:  7 Rooms  3 Bedrooms  2 Bath(s)  1,490 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).  Standard energy efficient items noted. The subject has a front porch, rear deck, enclosed porch, concrete drive and adquate landscaping.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  All improvements appear to be in fair condition. Physical depreciation noted due to normal wear & tear. There does not appear to be any functional obsolescence noted. External obsolescence noted due to current economic conditions.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes  X No If Yes, describe
There does not appear to be any adverse conditions affecting livability or soundness of the subject real property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  X Yes  ☐ No If No, describe
The subject real property conforms very well to the subject neighborhood.

E. Michael Cantrell Company, Inc.

## Uniform Residential Appraisal Report

File # 10010042

There are **15** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 70,000.00 to $ 130,000.00
There are **3** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 119,500.00 to $ 127,500.00

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2471 Cartersville Highway Dallas | 199 Westminster Way Dallas, Ga. 30132 | | 434 Confederate Avenue Dallas, Ga. 30132 | | 224 Hart Circle Dallas, Ga. 30132 | |
| Proximity to Subject | | 1.62 miles S | | 2.13 miles S | | 2.05 miles S | |
| Sale Price | $ N/A | $ | 119,500 | $ | 127,385 | $ | 127,500 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 69.96 sq. ft. | | $ 53.82 sq. ft. | | $ 82.10 sq. ft. | |
| Data Source(s) | | MLS-FMLS | | MLS-FMLS | | MLS-FMLS | |
| Verification Source(s) | | Deed Records | | Deed Records | | Deed Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing Concessions | | FHA $1,000 Cons. | | Cash $1,300 Cons. | | FHA $1,461 Cons. | |
| Date of Sale/Time | | 06/28/2010 | | 04/09/2010 | | 06/30/2010 | |
| Location | Rural | Rural | | Rural | | Rural | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.83 Ac/Avg | 46 Ac/Good | | 34 Ac/Good | | 1.93 Ac/Avg | |
| View | Average | Average | | Average | | Average | |
| Design (Style) | 1.0 Story/Avg | 1.0 St./Avg | | 1.5 St./Avg | | 1.5 St./Avg | |
| Quality of Construction | F-Brick/Avg | F-Brick/Avg | | F-Stone/Avg | | F-Stone,Vinyl/A | |
| Actual Age | A41/E20 | A38/E20 | | A73/E20 | | A28/E15 | -2,500 |
| Condition | Fair | Good | -5,000 | Good | -5,000 | Good | -5,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 3 2 | 7 3 2 | | 7 3 2 | | 8 4 2.5 | -500 |
| Gross Living Area | 1,490 sq. ft. | 1,708 sq. ft. | -2,200 | 2,367 sq. ft. | -8,800 | 1,553 sq. ft. | -600 |
| Basement & Finished Rooms Below Grade | None None | None None | | None None | | 1,000 Fin. br,bath,den | -5,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/FCA | FWA/FCA | | FWA/FCA | | FWA/FCA | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2-CP-Att | 2-CP-Att | | 1-Gar-Det | | 2-Gar-Att | -1,000 |
| Porch/Patio/Deck | 2-Porches, Deck | Porch, Deck | | Porch, Deck | | Porch,Deck,Pat. | -500 |
| FPS | 1-FP | 1-FP | | 1-FP | | 1-FP | |
| Pool | None | None | | None | | Pool | -2,500 |
| Kitchen | Avg. Kit. | Avg. Kit. | | Avg. Kit. | | Avg. Kit. | |
| Net Adjustment (Total) | | + X - | $ -7,200 | + X - | $ -13,800 | + X - | $ -17,600 |
| Adjusted Sale Price of Comparables | | Net Adj. 6.03 % Gross Adj. 6.03 % | $ 112,300 | Net Adj. 10.83 % Gross Adj. 10.83 % | $ 113,585 | Net Adj. 13.80 % Gross Adj. 13.80 % | $ 109,900 |

I **X** did    did not research the sale or transfer history of the subject property and comparable sales. If not, explain The subject real property has not sold in the last three years. The comparable sales have not sold twelve months prior to appraisal.

My research    did **X** did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  Paulding County Deed Records
My research    did **X** did not reveal any prior sales or transfers of the comparable sales for the prior year to the date of sale of the comparable sale.
Data Source(s)  Paulding County Deed Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No Sale 36 Months | No Sale 12 Months | No Sale 12 Months | No Sale 12 Months |
| Price of Prior Sale/Transfer | Prior to Appraisal | Prior to Appraisal | Prior to Appraisal | Prior to Appraisal |
| Data Source(s) | DB 1364, PG 651 | Deed Records | Deed Records | Deed Records |
| Effective Date of Data Source(s) | 07/06/2010 | 07/06/2010 | 07/06/2010 | 07/06/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject real property has not sold three years prior to appraisal. The comparable sales have not sold twelve months prior to appraisal. The appraiser has not appraised the subject real property three years prior to appraisal.

Summary of Sales Comparison Approach  After analyzing the market sales used above all three sales appear to be good indicators of value. The indicated range of value is from $109,900.00 to $113,585.00 with $112,000.00 being the most likely selling price.

Indicated Value by Sales Comparison Approach $ 112,000

Indicated Value by: Sales Comparison Approach $ 112,000  Cost Approach (if developed) $ 115,600  Income Approach (if developed) $ N/A

The appraiser has inspected the subject real property, subject neighborhood and the comparable sales used in this appraisal. The cost approach has set the upper limit of value and there was insufficient data to produce the income method. The sales comparision approach is determined to reflect fair market value best.

This appraisal is made **X** "as is",   subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,   subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or   subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  This appraisal is made "as is" with standard limiting conditions applying.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 112,000, which is the date of inspection and the effective date of this appraisal.

E. Michael Cantrell Company, Inc.

## Uniform Residential Appraisal Report

File # 10010042

The appraiser has researched the subject market area for three or more comparable sales that sold within a three to six month marketing period verses the appraisal date and are located within one to seven miles of the subject real property. The comparable sales used in this appraisal are the closest, most recent and comparable sales available.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

Site value based on recent sales of comparable sites in the subject area.

| | | | | |
|---|---|---|---|---|
| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 18,300 |
| Source of cost data  Marshall & Swift Cost Index | Dwelling  1,490  Sq. Ft. @ $  79.09 | | =$ | 117,844 |
| Quality rating from cost service Avg   Effective date of cost data  06/10 | BSMT  Sq. Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Appliances, Porches, Deck & 1-FP | | | 6,500 |
| Cost estimates taken from the local market along with | Garage/Carport  400  Sq. Ft. @ $  10.50 | | =$ | 4,200 |
| Marshall & Swift Residential Cost Index. | Total Estimate of Cost-New | | =$ | 128,544 |
| | Less  Physical  Functional  External | | | |
| | Depreciation  19,282 | 17,482 | =$ ( | 36,764 ) |
| | Depreciated Cost of Improvements | | =$ | 91,780 |
| | 'As-is' Value of Site Improvements | | =$ | 5,500 |
| | | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only)    N/A   Years | Indicated Value By Cost Approach | | =$ | 115,580 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $    N/A    X Gross Rent Multiplier    N/A    = $             Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  [ ] Yes  [ ] No  Unit type(s)  [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

Total number of phases          Total number of units          Total number of units sold

Total number of units rented          Total number of units for sale          Data Source(s)

Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No  If Yes, date of conversion

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No  Data Source(s)

Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  [ ] Yes  [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities

Summary Appraisal Report

## Uniform  Residential  Appraisal  Report

File #    10010042

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

E. Michael Cantrell Company, Inc.

## Uniform Residential Appraisal Report    File # 10010042

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

E. Michael Cantrell Company, Inc.

Summary Appraisal Report

## Uniform Residential Appraisal Report

File # 10010042

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**   The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  E. Michael Cantrell | Name |
| Company Name   E. Michael Cantrell Company, Inc. | Company Name |
| Company Address   P O Box 41 | Company Address |
| Rocky Face, GA 30740 | |
| Telephone Number   706-537-3845 | Telephone Number |
| Email Address   cantrellappraisals@optilink.us | Email Address |
| Date of Signature and Report   July 6, 2010 | Date of Signature |
| Effective Date of Appraisal   07/06/2010 | State Certification # |
| State Certification #   791 | or State License # |
| or State License # | State |
| or Other | Expiration Date of Certification or License |
| State   GA | |
| Expiration Date of Certification or License   09/30/2010 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 2471 Cartersville Highway | Date of Inspection |
| Dallas, Ga. 30132-2268 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED  VALUE  OF  SUBJECT  PROPERTY  $ 112,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name   Mr. Jeffrey Kelly | COMPARABLE SALES |
| Company Name   Jeffrey B. Kelly | ☐ Did not inspect exterior of comparable sales from street |
| Company Address   201 A West Crawford Street | ☐ Did inspect exterior of comparable sales from street |
| Dalton, Ga. 30720 | Date of Inspection |
| Email Address   kellycanhelp @ comcast. net | |

E. Michael Cantrell Company, Inc.



E. Michael Cantrell Company, Inc.

File No. __10010042__

## SITE PLAN

| | |
|---|---|
| Borrower or Owner | Dennis L. Wood |
| Property Address | 2471 Cartersville Highway |

| City | Dallas | County | Paulding | State | Ga. | Zip Code | 30132-2268 |
|---|---|---|---|---|---|---|---|
| Client | Jeffrey B. Kelly | | | | | | |

**Paulding County Parcel Maps**

Page 1 of 1



The Paulding County Assessor's Office makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. The assessment information is from the last certified taxroll. All data is subject to change before the next certified taxroll. PLEASE NOTE THAT THE PROPERTY MAPS ARE FOR ASSESSMENT PURPOSES ONLY NEITHER PAULDING COUNTY NOR ITS EMPLOYEES ASSUME RESPONSIBILITY FOR ERRORS OR OMISSIONS ---THIS IS NOT A SURVEY---

Paulding Home   -----   Search Page
© Website design by qpublic.net

http://qpublic5.qpublic.net/ga_paulding.html?parcel=085.4.4.006.0000&extent=2088155+...   6/30/2010

E. Michael Cantrell Company, Inc.



E. Michael Cantrell Company, Inc.

File No. ___10010042

| | Appraiser License | | | | | |
|---|---|---|---|---|---|---|
| Borrower or Owner | Dennis L. Wood | | | | | |
| Property Address | 2471 Cartersville Highway | | | | | |
| City Dallas | | County Paulding | | State Ga. | | Zip Code 30132-2268 |
| Client | Jeffrey B. Kelly | | | | | |

## STATE OF GEORGIA
## *REAL ESTATE APPRAISERS BOARD*

### MICHAEL EDWIN CANTRELL, SR

### 791

IS AUTHORIZED TO TRANSACT BUSINESS IN GEORGIA AS A
## CERTIFIED GENERAL REAL PROPERTY APPRAISER

THE PRIVILEGE AND RESPONSIBILITIES OF THIS APPRAISER CLASSIFICATION SHALL CONTINUE IN EFFECT AS LONG
AS THE APPRAISER PAYS REQUIRED APPRAISER FEES AND COMPLIES WITH ALL OTHER REQUIREMENTS OF THE
OFFICIAL CODE OF GEORGIA ANNOTATED, CHAPTER 43-39-A. THE APPRAISER IS SOLELY RESPONSIBLE FOR THE
PAYMENT OF ALL FEES ON A TIMELY BASIS.

CHARLES B. BRAMLETT
Chairperson

WILLIAM R. COLEMAN, JR.
PATRICIA K. LOVE
D. SCOTT MURPHY

SANDRA MCALISTER WINTER
Vice Chairperson

46530243

---

MICHAEL EDWIN CANTRELL, SR

# 791
Status ACTIVE

CERTIFIED GENERAL REAL PROPERTY
APPRAISER

THIS LICENSE EXPIRES IF YOU FAIL TO PAY
RENEWAL FEES OR IF YOU FAIL TO COMPLETE ANY
REQUIRED EDUCATION IN A TIMELY MANNER.

State of Georgia
Real Estate Commission
Suite 1000 - International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303-1605

ORIGINALLY LICENSED
06/21/1991
END OF RENEWAL
09/30/2010



JEFFREY LEDFORD
Real Estate Commissioner

46530243

---

MICHAEL EDWIN CANTRELL, SR

# 791
Status ACTIVE

CERTIFIED GENERAL REAL PROPERTY
APPRAISER

THIS LICENSE EXPIRES IF YOU FAIL TO PAY
RENEWAL FEES OR IF YOU FAIL TO COMPLETE ANY
REQUIRED EDUCATION IN A TIMELY MANNER.

State of Georgia
Real Estate Commission
Suite 1000 - International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303-1605

ORIGINALLY LICENSED
06/21/1991
END OF RENEWAL
09/30/2010

JEFFREY LEDFORD
Real Estate Commissioner

46530243

Report Version 6

Generated on 10/1/2009 at 4:14:26 PM



File No. 10010042

**SKETCH ADDENDUM**

| | |
|---|---|
| Borrower or Owner | Dennis L. Wood |
| Property Address | 2471 Cartersville Highway |
| City Dallas | County Paulding  State Ga.  Zip Code 30132-2268 |
| Client | Jeffrey B. Kelly |

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1490.0 | 1490.0 |
| GAR | Garage | 400.0 | 400.0 |
| P/P | Porch | 300.0 | |
| | Porch | 288.0 | |
| | Porch | 120.0 | 708.0 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 50.0 x 13.0 | | 650.0 |
| 12.0 x 70.0 | | 840.0 |

| Net LIVABLE Area | (rounded) | 1490 | 2 Items | (rounded) | 1490 |

E. Michael Cantrell Company, Inc.



## PHOTOGRAPH ADDENDUM

| | | | | | |
|---|---|---|---|---|---|
| Borrower or Owner | Dennis L. Wood | | | | |
| Property Address | 2471 Cartersville Highway | | | | |
| City | Dallas | County | Paulding | State | Ga. |
| Client | Jeffrey B. Kelly | | | Zip Code | 30132-2268 |

File No.    10010042



FRONT VIEW OF
SUBJECT PROPERTY



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE OF
SUBJECT PROPERTY

E. Michael Cantrell Company, Inc.

File No.   10010042

## PHOTOGRAPH ADDENDUM

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower or Owner | Dennis L. Wood | | | | | |
| Property Address | 2471 Cartersville Highway | | | | | |
| City | Dallas | County | Paulding | State | Ga. | Zip Code   30132-2268 |
| Client | Jeffrey B. Kelly | | | | | |



### COMPARABLE #1

199 Westminster Way
Dallas, Ga. 30132

| | |
|---|---|
| Price | $119,500 |
| Price/SF | 69.96 |
| Date | 06/28/2010 |
| Age | A38/E20 |
| Room Count | 7-3-2 |
| Living Area | 1,708 |
| | |
| Value Indication | $112,300 |



### COMPARABLE #2

434 Confederate Avenue
Dallas, Ga. 30132

| | |
|---|---|
| Price | $127,385 |
| Price/SF | 53.82 |
| Date | 04/09/2010 |
| Age | A73/E20 |
| Room Count | 7-3-2 |
| Living Area | 2,367 |
| | |
| Value Indication | $113,585 |



### COMPARABLE #3

224 Hart Circle
Dallas, Ga. 30132

| | |
|---|---|
| Price | $127,500 |
| Price/SF | 82.10 |
| Date | 06/30/2010 |
| Age | A28/E15 |
| Room Count | 8-4-2.5 |
| Living Area | 1,553 |
| | |
| Value Indication | $109,900 |

✎ B 250A (Rev. 12/09)

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

**In re** DENNIS LEE WOOD

DENNIS LEE WOOD

**Debtor**

WELLS FARGO BANK, N.A. and
WACHOVIA BANK, NATIONAL
ASSOCIATION

**Plaintiff**

**Defendant**

Bankruptcy Case No.
R10-43144-PWB

Adversary Proceeding No.

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

> **Clerk, United States Bankruptcy Court**
> **600 East First Street, Room 339**
> **Rome, GA 30161-3187**

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

> Jeffrey B. Kelly
> Law Office of Jeffrey B. Kelly
> 107 East Fifth Avenue
> Rome, GA 30161

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____

_Clerk of the Bankruptcy Court_

By: _____

_____          _____

_Date_                                                        _Deputy clerk_